**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,      )

                     Plaintiff,   )     Case No. 2:09-cr-00207-RLH-PAL

                                  )

vs.                            )    **REPORT OF FINDINGS AND RECOMMENDATION**

                                  )

MICHAEL PAUL PALUMBO,       )

                                  )    (Mtn to Suppress - Dkt. #20)

                      Defendant.  )

_____)

This matter is before the court on defendant Michael Paul Palumbo's ("Palumbo") Motion to Suppress Evidence (Dkt. #20) filed August 18, 2009, which was referred to the undersigned for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-3 and IB 1-4. On August 20, 2009, the government filed an Opposition (Dkt. #21) to which Palumbo replied (Dkt. #22) on August 26, 2009. The court allowed new counsel for Palumbo to supplement the papers and set the matter for oral argument October 26, 2009. The hearing was continued three times pursuant to stipulation of counsel for various reasons (see Dkt. ## 32, 34, 35). The hearing was continued a fourth time *sua sponte* because the court was indisposed. At the November 19, 2009 hearing, counsel for Palumbo also supplemented the record with an Affidavit and attached exhibits (Dkt. #39). The court has considered the moving and responsive papers and the arguments of counsel at the hearing. For the reasons explained below, the court finds that Palumbo is not entitled to an evidentiary hearing and will recommend that the motion to suppress be denied, finding the arresting officers had probable cause for Palumbo's arrest.

**BACKGROUND**

Mr. Palumbo is charged in an Indictment (Dkt. #1) returned May 19, 2009, with Felon in Possession of a Firearm, in violation on 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and Possession with

1   Intent to Distribute Controlled Substance, in violation of 21 U.S.C. §§ 847(a)(1) and (b)(1)(B)(viii).

2   The motion seeks to suppress all evidence derived from Palumbo's stop and arrest.

3       On September 3, 2009, counsel for Palumbo filed a Sealed Ex Parte Motion to Withdraw as

4   Counsel and for Appointment of New Counsel (Dkt. #23).  The court held a hearing on the motion to

5   withdraw, granted the motion, and appointed new counsel, Mr. Kalani K. Hoo, to represent Palumbo.

6   The court ordered Mr. Hoo to review the motion to suppress and to file an affidavit supporting his

7   position that Palumbo was entitled to an evidentiary hearing within fifteen days.  Mr. Hoo submitted his

8   own Affidavit (Dkt. #26) which avers "through information and belief" that on December 2, 2008,

9   Palumbo met with Cathy Ozment who was driving a black Chevrolet Blazer.  Hoo Affidavit (Dkt. #26),

10  ¶ 2.  Ozment met with Palumbo to return her house key.  Id.  After returning the key, Ozment drove off,

11  and Detectives Malia and Alsup approached Palumbo.  Id., ¶ 3.  The detectives who approached

12  Palumbo asked for drugs.  "Palumbo denied that Detectives' requests, and denied possessing any

13  drugs."  Id.  Palumbo did not mention or imply that he had drugs or offer drugs for sale.  Id., ¶ 5.

14  Palumbo entered a store, and the detectives left the parking lot.  Id., ¶ 6.  When Palumbo returned to the

15  F150, two police cars approached at a high rate of speed, with guns drawn.  Id., ¶ 7.  No pistol was

16  visible on his person, and he was arrested.  Palumbo was handcuffed, a black pillowcase was placed

17  over his head, and he was placed in the rear of a police car, and driven to another location.  Id.  At some

18  time, the vehicle stopped, and the pillowcase was removed and exchanged for a smaller black mask.

19  Id., ¶ 8.  When the masks were changed, Palumbo could see officers searching the F150 truck.  Id.  The

20  officer was "digging upwards through the dashboard of the F150."  Id.  The F150 was not equipped

21  with a center console.

22      The Supplemental Affidavit (Dkt. #39) submitted the morning of the hearing consists of a

23  description of all of the options on the 2008 Ford F150 Palumbo was driving at the time of the arrest.

24  Defense counsel subpoenaed Enterprise Rental Car to obtain this information.  The vehicle description

25  indicates that the vehicle was equipped with a bench seat, and there is no indication that the vehicle had

26  a center console.

27  / / /

28  / / /

2

1

**DISCUSSION**

2  **I.      The Parties' Positions**

3          **A.      Palumbo's Motion to Suppress (Dkt. #20) and Reply (Dkt. #22)**

4          Palumbo's motion to suppress asserts that his Fourth Amendment rights were violated because

5  the police did not have probable cause to arrest him.  He argues that the uncorroborated information

6  supplied by the anonymous tipster was insufficient to establish probable cause and that the officers did

7  not observe him engaging in criminal activity.  Because the arrest was not based on probable cause, the

8  court should suppress all evidence derived from his person and from a subsequent search of the Ford

9  F150 he was driving under the "fruit of the poisonous tree" doctrine.

10          The statement of facts supporting the initial motion to suppress was based on the Declaration of

11  Arrest of Detective R. Bourque, which was attached as Exhibit "A" to the motion.  It did not identify

12  any contested issues of fact[1].  The Reply (Dkt. #22) reiterated that the defense was relying on the facts

13  proffered in the motion to suppress, but inconsistently and in conclusory fashion, stated that "[t]he facts

14  proffered by the government in its response differ are in contrast [sic] from those proffered by the

15  defense."  Reply (Dkt. #22), 2:7-9.

16          During oral argument, counsel for Palumbo acknowledged that the defendant was not contesting

17  that the Ford F150 was impounded pursuant to Las Vegas Metropolitan Police Department ("LVMPD")

18  policy or challenging the inventory search of the vehicle.  Rather, he contends evidence seized from the

19  vehicle should be suppressed under the "fruit of the poisonous tree" doctrine as an illegal search tainted

20  by an arrest which lacked probable cause.

21          **B.      Government's Opposition (Dkt. #21)**

22          In response, the government asserts that Palumbo is not entitled to an evidentiary hearing

23  because there are no significant issues of fact for the court to determine, only issues of law.  The

24

25

26          [1]   The initial motion to suppress also requested that all evidence of his identity, fingerprints,
statements, his immigration file, and all observations of his presence in the United States be

27  suppressed.  The government responded that Palumbo was born in Norfolk, Virginia, and is a United
States citizen.  It would appear the initial motion was a "cut and paste" from a prior motion which was

28  not adequately proofread.

3

1  government argues that there was sufficient probable cause to arrest Palumbo.  The government agrees

2  that the Declaration of Arrest attached to Palumbo's motion to suppress accurately describes the

3  events which resulted in his arrest.  The government argues that the totality of the circumstances

4  established probable cause for this arrest based on information provided by the anonymous tipster

5  and followup investigation conducted by arresting officers which corroborated details the tipster

6  provided.  Alternatively, the government suggests the officers had reasonable suspicion to conduct

7  an investigatory stop which developed probable cause for his arrest once a firearm was observed

8  protruding from Palumbo's front pants pocket.  The government relies on Ninth Circuit decisions

9  holding that evidence of the possession of firearms can be relevant to show involvement in the narcotics

10  trade.  See, *e.g.*, United States v. Crespo De Llano, 838 F.2d 1006 (9th Cir. 1987).

11  After Palumbo's arrest, the F150 rental Palumbo was driving was impounded, and an inventory

12  search of the vehicle conducted which recovered several types of drugs.  The government's opposition

13  points out that in one portion of the motion to suppress, the defendant only asks the court to suppress

14  "evidence derived from a search of Mr. Palumbo's person."  Based on this request, government counsel

15  assumes Palumbo is not challenging the admissibility of drugs found in the vehicle, only the firearm

16  recovered from his person.  The government also argues that even if Palumbo's Fourth Amendment

17  rights were violated, the court should not suppress the evidence because exclusion would not

18  meaningfully deter unlawful police conduct.

19  **II.**   **Applicable Legal Authority & Analysis**

20  **A.**   **Evidentiary Hearing**

21  The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on

22  a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness,

23  clarity, and specificity to enable the court to conclude that contested issues of material fact exist.

24   United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) (citing United States v. Walczak, 783 F.2d

25  852, 857 (9th Cir. 1986); United States v. Carrion, 463 F2d 704, 706 (9th Cir. 1972) ("Evidentiary

26  hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and

27  specificity to enable the trial court to conclude that relief must be granted if the facts alleged are

28  proved"); United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990).  "A hearing will not be held on a

1  defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant

2  must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required."

3  Howell, 231 F.3d at 621 (citing Harris, 914 F.2d at 933). The determination of whether an evidentiary

4  hearing is appropriate rests in the reasoned discretion of the trial court. United States v. Santora,

5  600 F.2d 1317, 1320 (9th Cir. 1979), amended by, 609 F.2d 433 (9th Cir. 1979).

6  Palumbo's motion does not allege there are material issues of fact to be decided. In his Reply

7  (Dkt. #22), Palumbo states in conclusory fashion that the facts proffered by the government are

8  different from those offered by the defense but offers no specific examples. The Declaration of Arrest

9  was attached as Exhibit "A" to his motion, and the statement of facts in the motion tracks the facts

10  outlined in the Declaration of Arrest. The government's opposition states that it is in full agreement

11  with the facts as set forth in the Declaration of Arrest. The court finds Palumbo's moving papers do not

12  establish he is entitled to an evidentiary hearing.

13  The initial motion to suppress and reply brief filed by prior counsel did not identify any disputed

14  issues of fact. Rather, the motion relied upon Detective Bourque's Declaration of Arrest to support the

15  defendant's position that the arresting officers lacked probable cause for the arrest and that all evidence

16  derived from his stop and arrest must be suppressed under the "fruit of the poisonous tree" doctrine.

17  Mr. Hoo's affidavit, which is based on information and belief, also does not establish any contested

18  issues of fact necessary to decide whether there was probable cause for Palumbo's arrest. At most, it

19  provides an innocent explanation for Palumbo's contact with the driver of a black Chevrolet Blazer on

20  the day of his arrest, states that Palumbo did not mention or imply that he had drugs or offer drugs for

21  sale, denies that a pistol was visible on his person at the time of his arrest, and describes events after the

22  arrest. Similarly, the supplemental exhibit does not establish a contested issue of fact relevant to the

23  determination of probable cause for his arrest which requires an evidentiary hearing. The court finds

24  Palumbo has not demonstrated a significant disputed factual issue exists which requires an evidentiary

25  hearing and will decide the motion on the moving and responsive papers and the arguments of counsel.

26  **B.   The Fourth Amendment**

27  The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

28  papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth

1   Amendment protects reasonable and legitimate expectations of privacy.  <u>Katz v. United States</u>, 389 U.S.

2   347 (1967).  The Fourth Amendment protects "people not places."  <u>Id.</u>  Evidence obtained in violation

3   of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the

4   poisonous tree."  <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

5        **C.**    **Probable Cause**

6       Probable cause is required to justify certain governmental intrusions upon interests protected by

7   the Fourth Amendment.  <u>See Ornelas v. United States</u>, 517 U.S. 690, 695 (1996); <u>Illinois v. Gates</u>,

8   462 U.S. 213, 241 (1983).  In certain circumstances, law enforcement officers may lawfully arrest

9   persons without a warrant if the officer has probable cause to believe the person has committed a

10   felony.  <u>United States v. Watson</u>, 423 U.S. 411, 418, 422 n. 11 (1976); <u>Maryland v. Pringle</u>, 540 U.S.

11   366, 373-74 (2003).  A determination of whether probable cause is made by examining the totality of

12   the circumstances.  <u>Gates</u>, 462 U.S. at 241.  The Supreme Court has repeatedly emphasized that the

13   probable cause standard is a "practical, non-technical conception."  <u>Brinegar v. United States</u>, 338 U.S.

14   160, 176 (1949).  A probable cause determination is two-fold.  First, a court must determine "historical

15   facts," that is, the events leading up to the stop or search.  <u>Ornelas</u>, 517 U.S. at 696.  Second, the court

16   must determine "whether those historical facts, viewed from the standpoint of a reasonable police

17   officer," amount to probable cause.

18       Facts supporting probable cause can come from several sources, including the observations of

19   law enforcement who use their expertise and training to draw inferences of criminal activity from

20   behavior that is not criminal on its face.  <u>See</u>, <u>e.g.</u>, <u>Alford v. Haner</u>, 446 F.3d 935, 937 (9th Cir. 2006)

21   (probable cause to arrest for impersonating officer where police observed police radio, scanner, and

22   handcuffs in car).  Probable cause may also be based upon information from an anonymous source that

23   can be independently corroborated.  <u>See Gates</u>, 462 U.S. 213, 238 (1983). In <u>United States v. Arvizu</u>,

24   534 U.S. 266 (2002), the Supreme Court emphasized that courts "must look at the 'totality of the

25   circumstances' of each case" rather than considering each piece of evidence in isolation.

26       The court finds the arresting officers had probable cause to arrest Palumbo based on the

27   undisputed facts contained in Detective Bourque's Declaration of Arrest.  The cumulative information

28   available to investigating police officers created probable cause to believe that Palumbo had engaged or

1    was engaging in drug trafficking.  During oral argument, counsel for Palumbo argued that Detective

2    Bourque did not have personal knowledge of all of the information included in his Declaration of

3    Arrest.  However, it is well established that probable cause may be based on the collective knowledge

4    of all officers involved in an investigation.  United States v. Bernard, 623 F.2d 551, 560 (9th Cir. 1980).

5    Officers are entitled to rely on the observations and knowledge of other officers, even if some of the

6    critical information is not communicated to the arresting officers.  Id. at 560-61.  Similarly, "the

7    arresting officer need not have personal knowledge of the facts sufficient to constitute probable cause"

8    and "need not be aware of all the facts and circumstances known to the other officers participating in

9    the arrest."  United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989), overruled on other grounds

10   by United States v. Ruiz, 257 F.3d 1030, 1032 (9th Cir. 2001).  Rather, probable cause exists if at the

11   moment of arrest, the facts and circumstances within the knowledge of the arresting officers and of

12   which they had reasonably trustworthy information is sufficient to warrant a prudent person in believing

13   that the person arrested had committed or was committing an offense.  Bernard, 623 F.2d at 559.  As a

14   general rule, "where law enforcement authorities are cooperating in an investigation . . . the knowledge

15   of one is presumed shared by all."  Illinois v. Andreas, 463 U.S. 765, 772, n. 5 (1983).  See also United

16   States v. Jensen, 425 F.3d 698, 705 (9th Cir. 2005) (explaining the collective knowledge doctrine is an

17   accepted practice of modern law enforcement which exists in light of the complexity of modern police

18   work and allows an arresting officer who lacks actual personal knowledge of facts supporting probable

19   cause to rely on the collective knowledge of law enforcement personnel cooperating in an

20   investigation).  Thus, the fact that Detective Bourque did not have personal knowledge of all of the

21   facts related in his Declaration of Arrest does not defeat a finding of probable cause.

22          In this case, both sides rely on Detective Bourque's Declaration of Arrest to support their Fourth

23   Amendment arguments.  Detective Bourque's Declaration of Arrest was submitted under penalty of

24   perjury and outlines the reasons for the arrest, which the court concludes was based on probable cause.

25   At the time of Palumbo's arrest, police officers collectively had probable cause for the arrest for the

26   following reasons.  First, Detective Bourque who is assigned to the LVMPD narcotics detail obtained

27   information that an individual known as "Mike," described as a white male with his head shaved, in his

28   mid-thirties, was selling drugs.  Second, the informant indicated "Mike" used cell phone number

1   "702-752-9984" to sell drugs.  Third, to confirm information received from the informant, Detective

2   Bourque arranged for undercover Detectives Alsup and Malia to meet with "Mike," later identified as

3   Michael Palumbo, to buy methamphetamine.  Fourth, Detective Alsup placed a call to Palumbo at the

4   number the informant provided in Bourque's presence.  Fifth, Detective Alsup spoke with "Mike" who

5   directed her to the area of Cheyenne and Jones to sell methamphetamine.  Detectives Malia and Alsup

6   went to this area, assisted by surveilling officers.

7           Sixth, surveilling detectives observed two unknown females arrive in the parking lot in a black

8   Chevrolet Blazer and circle the lot a number of times before parking near the surveillance vehicle.

9   Seventh, the passenger of the Blazer was observed placing a phone call and after placing the call, the

10  females in the Blazer left the lot.  Eighth, Detective Alsup placed a second call to Palumbo who said

11  that he was no longer in the parking lot at Cheyenne and Jones and directed her to a Rebel station on

12  Rancho and Cheyenne to sell her methamphetamine, telling her he was driving a Ford F150 truck.

13  Ninth, the surveillance officers went to the parking lot of the Rebel station and observed the same two

14  females in the black Chevrolet Blazer.  Tenth, the two females made contact with Palumbo near his

15  vehicle, and one of the women appeared to conduct a hand-to-hand transaction with Palumbo.  The

16  women left the lot after this transaction.  Eleventh, while under surveillance, Palumbo made contact

17  with at least three additional individuals for a brief period of time, engaging in actions consistent with

18  street level sales.  Twelfth, surveilling officers observed Detectives Malia and Alsup arrive at the meet

19  location.  Detectives Malia and Alsup made contact with Palumbo near his vehicle, and Palumbo told

20  the detectives he did not recognize them from any previous transactions and could not sell them

21  anything.  Detective Malia informed Palumbo they had money and wanted to buy, but Palumbo told the

22  detectives he could not sell to them without someone introducing them and also that he had nothing left

23  to sell them.

24          Palumbo's moving papers and supporting affidavits and exhibits do not dispute Detective

25  Bourque's sworn Declaration of Arrest that Palumbo had a telephone conversation with Detective

26  Alsup in which he made arrangements to meet her at Cheyenne and Jones to sell her methamphetamine.

27  He does not dispute that Detective Alsup called him a second time and that he directed her to go to a

28  Rebel station on Rancho and Cheyenne.  He does not dispute that he told Detective Alsup he was

8

1    driving a Ford F150; and, in fact, Mr. Hoo's affidavit confirms Palumbo was driving a Ford F150 on

2    the date of his arrest.  His supplemental affidavit and attached exhibits establish that it was rented from

3    Enterprise Rental Car.  Mr. Hoo's affidavit provides an innocent explanation for Palumbo's contact

4    with the driver of the Chevrolet Blazer.  However, Palumbo does not dispute that surveillance officers

5    observed him making contact with three additional persons within a brief period of time, engaging in

6    actions consistent with street level sales.

7           Mr. Hoo's affidavit acknowledges that the detectives who approached Palumbo asked for drugs.

8    It also states, in conclusory fashion, that "at no time did Palumbo mention or imply that he had drugs,

9    nor did he offer any for sale."  However, the affidavit does not dispute, or even address, Detective

10   Bourque's sworn Declaration of Arrest, indicating that Palumbo would not sell to the detectives

11   because he did not recognize them from previous transactions, could not sell to them without an

12   introduction, and had nothing left to sell them.

13          As indicated, neither the initial motion to suppress nor any of the supplemental papers or

14   arguments filed on behalf of Palumbo claim that the rental truck he was driving was not properly

15   impounded pursuant to standard police policy.  Similarly, Palumbo does not challenge the inventory

16   search of the vehicle.  Counsel for Palumbo confirmed this during oral argument.  Rather, Palumbo

17   asserts that evidence derived from the search of the vehicle should be suppressed under the "fruit of the

18   poisonous tree" doctrine because the arrest itself was not based on probable cause.  The court finds that

19   under the totality of the circumstances known to the arresting officers, there was ample probable cause

20   for this arrest.

21          Accordingly, having reviewed and considered the matter,

22          **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

23   Palumbo's Motion to Suppress (Dkt. #20) be DENIED.

24          Dated this 23rd day of November, 2009.

25

26                                          _____
                                            PEGGY A. LEEN
27                                          UNITED STATES MAGISTRATE JUDGE

28

                                            9